DAVID J. MICLEAN (SBN 115098)
dmiclean@micleangleason.com
MICLEAN GLEASON LLP
1301 Shoreway Road, Suite 290
Belmont, CA 94002
Telephone: (650) 684-1181

SHAWN J. KOLITCH (*Pro Hac Vice*)
E-mail: shawn@kolitchromano.com
Oregon State Bar No. 063980
KOLITCH ROMANO LLP
520 SW Yamhill Street, Suite 200
Portland, OR 97204
Telephone: (503) 994-1650
Facsimile: (971) 279-4549

Attorneys for Plaintiff
FUTURE MOTION, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FUTURE MOTION, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JW BATTERIES LLC, a Texas Company,<br><br>Defendant. | Case No. 3:21-cv-06771-EMC<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Honorable Edward M. Chen |

## I. INTRODUCTION

The Court has jurisdiction over Defendant JW Batteries LLC ("JW Batteries") based on Defendant's intentional targeting of Plaintiff Future Motion, Inc. ("Future Motion"),

1

which has its headquarters in Santa Cruz, California. Defendant targets Future Motion's business and its customers through the manufacture and sale of Defendant's "F*ck Future Motion" technology circumvention chip, the dissemination of Defendant's trademark infringing JWXR stickers, and numerous sales and direct communications between JW Batteries and California residents and businesses, most of which are Future Motion's customers. Jurisdictional discovery has revealed that Defendant's contacts with California and targeting of Future Motion easily exceed of the minimum needed to establish personal jurisdiction.

Specifically, as discussed in detail below, Defendant has failed to provide any explanation for the name of its JWFFM Chip other than to target Future Motion's reputation and cause harm to its hard-earned customer goodwill. Furthermore, in the 16-month period from September 19, 2020 through January 12, 2022, Defendant conducted well over 500 sales transactions with California residents, of which approximately 98% relate to the products at issue in this action and were made to Future Motion's customers. In addition, Defendant produced over 500 pages of written communications with California residents, including customers, prospective customers, and California businesses. All, or at least nearly all, of these communications relate to the installation of Defendant's products at issue in this action into Future Motion's Onewheel boards, and also represent communications with Future Motion's preexisting customers.

Defendant's communications with California residents include, for example, providing detailed product and technical information to prospective California customers; providing extensive technical support to California customers; referring California

customers to California businesses for product installation services; responding to California dealer inquiries; making arrangements for customers to ship products back and forth from California to Defendant's shop for service; arranging (and then presumably conducting) technical support phone calls with California customers; and extensive direct communications with California businesses regarding installation of Defendant's products into Future Motion's Onewheel boards.

Defendant's contacts with California are not sporadic or few, but rather are regular, consistent, and voluminous. In a relatively short amount of time (under 16 months) Defendant shipped hundreds of its products to hundreds of distinct California customers and addresses, and engaged in many dozens, if not hundreds, of direct communications with California customers, prospective customers in California, and product installation businesses in California. Because Defendant's products have no use other than to be installed into Future Motion's products, all of Defendant's communications with prospective and actual customers are necessarily also communications with Future Motion's customers. Taken together with Defendant's intentional targeting of Future Motion through the naming of its "F*ck Future Motion" chip and its dissemination of trademark infringing JWXR stickers, Defendant's activities directed toward California are sufficient for this Court to find that it has personal jurisdiction over Defendant.

II.   RELEVANT PROCEDURAL HISTORY

On August 31, 2021, Plaintiff Future Motion, Inc. ("Future Motion") filed its Complaint for violations of the Digital Millennium Copyright Act, the Computer Fraud and Abuse Act, and the Lanham Act against Defendant JW Batteries LLC ("JW Batteries")

(ECF No. 1). On October 25, 2021, JW Batteries filed a Rule 12 Motion to Dismiss for lack of personal jurisdiction and/or improper venue (ECF No. 16), and on November 8, 2021, Future Motion filed a response in opposition to Defendant's Motion to Dismiss (ECF No. 18).

On November 15, 2021, Future Motion filed a motion for jurisdictional discovery (ECF No. 24), and on November 29, 2021, JW Batteries filed a response in opposition to Future Motion's motion for jurisdictional discovery (ECF No. 28). On December 14, 2021, the Court granted Plaintiff's motion for leave to conduct jurisdictional discovery, deferred a ruling on Defendant's motion to dismiss, and ordered the parties to file a stipulation regarding a timeframe for jurisdictional discovery and supplemental briefing on the issue of personal jurisdiction no later than December 28, 2021 (ECF No. 30).

On December 27, 2021, the parties filed a stipulation agreeing to complete jurisdictional discovery by January 31, 2022, and setting a supplemental briefing schedule regarding the issue of jurisdictional discovery to be completed by February 28, 2022 (ECF No. 31). The original supplemental briefing schedule was modified slightly by stipulation (ECF No. 34). The modified schedule calls for Plaintiff to file a supplemental brief on the issue of personal jurisdiction by February 21, 2022 (which advances to February 22, 2021 due to the federal holiday on February 21), and for Defendant to file a responsive supplemental brief by February 28, 2022 (ECF No. 35).

### III.   LEGAL STANDARDS

Courts in the Ninth Circuit use a three-prong test for analyzing a claim of specific personal jurisdiction: "(1) The non-resident defendant must purposefully direct his

4

activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The parties in this case dispute whether Defendant meets the "purposeful direction" requirement, proof of which "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)). More specifically, "[t]o establish purposeful direction, a plaintiff must satisfy a 3-prong test from the United States Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state." *Youlin Wang v. Kahn*, Case No. 20-CV-08033-LHK at 27 (N.D. Cal. January 4, 2022). "Communications with an individual located in California are activities 'directed' at California." *Id.* at 30. Future Motion believes the only point of disagreement here is whether Defendant's relevant acts were "expressly aimed" at California.

Establishing the "express aiming" requirement requires "something more" than "a foreign act with foreseeable effects in the forum state." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (citation omitted). For instance, "random,

PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

fortuitous, or attenuated contacts are insufficient to create the requisite connection to the forum." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). In determining whether a nonresident defendant has done "something more," courts in the Ninth Circuit consider multiple factors, including the "interactivity of the defendant's website" and "whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix Photo Inc. v. Brand Technologies Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (citations omitted).

## IV. ARGUMENT

Defendant's activities directed at California which constitute "something more" sufficient to satisfy the express aiming requirement for personal jurisdiction include (1) targeting California-based Future Motion and its reputation by naming the anticircumvention chip at issue in this action the "F*ck Future Motion" chip and disseminating the chip to Future Motion's customers in California and nationwide; (2) disseminating trademark infringing JWXR stickers to customers in at least 15 U.S. states including California, thereby causing harm Defendant knew would be felt by Future Motion in California; (3) extensive online sales and shipment of products into California and throughout the United States, all of which target Future Motion's business by requiring modification of Future Motion products by existing Future Motion customers; and (4) numerous direct communications with individuals and businesses in California—almost all of whom are also Future Motion customers—relating to the products at issue in this action.

Even more generally, by developing and disseminating products throughout the United States (including in California) that can only be used by Future Motion's customers through allegedly dangerous modification of Future Motion's products including the installation of Defendant's "F*ck Future Motion" circumvention chip, Defendant has knowingly targeted Future Motion's business and reputation, causing harm to Future Motion in California, where Future Motion is based. Accordingly, the Court can reasonably conclude that Defendant's very existence and essentially all of its commercial activities target California-based Future Motion. In this manner, Defendant's activities relating to California clearly constitute "something more" than just operating a passive website that happens to generate some California sales.

### A.     The "JWFFM Chip" Targets Future Motion

Future Motion alleged in its Complaint that "FFM" in the name of Defendant's JWFFM Chip at issue in this action stands for "F*ck Future Motion" (ECF No. 1, ¶ 20). When Future Motion attempted to confirm this fact at Defendant's 30(b)(6) jurisdictional deposition, Defendant's counsel instructed Defendant not to answer, and Future Motion chose not to press the issue further because Defendant has never offered any alternative meaning or explanation for the name.[1] The Court should therefore take Future Motion's uncontroverted allegation regarding the meaning of "FFM" as true. *Schwarzenegger v.*

---

[1] *See* Declaration of Shawn Kolitch in Support of Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss ("Kolitch Decl."), ¶2, Ex. A, Depo. pp. 19-20 (Defendant's counsel: "You don't have to answer that. It's not about jurisdiction.").

*Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). It is also uncontroverted that the only conceivable use of Defendant's JWFFM Chip is to be installed in Future Motion's Onewheel boards, to circumvent Future Motion's technology measures and allow the use of high capacity batteries that would otherwise not function in Future Motion's products. ECF No. 1, ¶ 22. Accordingly, Defendant's actions are directed at, and causing harm to, Future Motion, which has its headquarters in California.

More specifically, by making, selling, and naming its circumvention chip "F*ck Future Motion," Defendant has clearly "targeted" Future Motion and its reputation. This alone is sufficient to establish personal jurisdiction. *See, e.g.*, *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) ("Thus this case is unlike *Cybersell v. Cybersell*, 130 F.3d 414 (9th Cir.1997), where there was no evidence that the defendant even knew of the existence of plaintiff. Here, [the defendant] knew of [the plaintiff's] existence, targeted [the plaintiff's] business, and entered direct competition with [the plaintiff]."); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) ("The brunt of the harm to [the plaintiff] was felt in California. [The defendant] knew [the plaintiff] would likely suffer harm there because . . . its principal place of business was in California . . .").

Similarly, in this case it is obvious that Defendant knew of Future Motion's existence, targeted Future Motion's reputation and customer base, entered into direct competition with Future Motion, sought to undermine Future Motion's customer goodwill through the naming of its JWFFM Chip, and did all of these things knowing that Future Motion is based in California and would experience the brunt of the harm there. In fact,

there is no dispute that Defendant's entire existence is based on targeting Future Motion and its customers, because Defendant's JWFFM Chip can only be used by Future Motion's customers. This intentional targeting of California-based Future Motion and its customers is "something more" sufficient to establish personal jurisdiction over Defendant.

**B.     Defendant's JWXR Stickers Further Target Future Motion**

Defendant's dissemination of its JWXR stickers, which Future Motion has alleged creates a false impression of Defendant's affiliation with Future Motion and post-sale confusion, also demonstrates that Defendant's activities have targeted Future Motion:


Defendant's Use of JWXR


Future Motion's XR Mark

ECF No. 1, ¶¶ 28-30. Jurisdictional discovery indicates that Defendant has disseminated its JWXR stickers to customers in 15 U.S. states, including California. Kolitch Decl., ¶ 3, Ex. B. The resulting likelihood of consumer confusion and post-sale confusion clearly targets Future Motion, a California-based company, and further supports that Defendant has done "something more" than simply operate a passive website.

**C.     Defendant's Extensive Sales Target Future Motion**

Defendant's sales data produced through jurisdictional discovery reveal that from September 19, 2020 through January 12, 2022, Defendant conducted approximately 583 sales transactions with California residents (including about 60 returns), of which approximately 570 relate to the products at issue in this action. Kolitch Decl., ¶ 4, Ex. C. In roughly the same time period, Defendant conducted approximately 3415 total sales

transactions (including about 375 returns), of which approximately 3350 relate to the products at issue in this action. Kolitch Decl., ¶ 5, Ex. D. Thus, around 98% of Defendant's business constitutes selling products that have no purpose other than to be installed in Future Motion's Onewheel boards. All such sales target Future Motion and its customer base, by displacing an authorized Future Motion battery replacement or a new Onewheel vehicle purchase, and also (according to Future Motion's uncontroverted allegation) posing a significant risk of injury or death to Future Motion's customers and others through sudden motor shutdown or catastrophic battery fire. ECF No. 1, ¶ 27.

In other words, it is uncontroverted that virtually all of Defendant's commercial activities *require* modification of Future Motion's products by Future Motion customers, which is alleged harmful conduct that targets Future Motion. The "expressly aimed" requirement is met "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be resident of the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal quotation marks omitted). In the present case, all of Defendant's activities are targeted at California-based Future Motion and its customers.

### D. Defendant's Numerous Communications with California Residents and Businesses Constitute "Something More"

"Communications with an individual located in California are activities 'directed' at California." *Youlin Wang v. Kahn*, Case No. 20-CV-08033-LHK at 30 (N.D. Cal. January 4, 2022). Through jurisdictional discovery, Defendant produced approximately 500 pages of email communications with individuals located in California, and

approximately 50 pages of additional communications with individuals likely to be located in California based on the area code of the individual's phone number. Kolitch Decl., ¶ 6. Defendant's communications with California residents represent activities "directed at California" in at least the following categories, with exemplary communications cited and included in Exhibits.

### 1. Communications with Prospective California Customers

In addition to communications with its existing customers (described later), Defendant has communicated with numerous prospective customers in California, providing product and technical information. Some of these prospective California customers later placed orders for Defendant's products. *See, e.g.,* Kolitch Decl., ¶ 7, Ex. E, pp. JW_000995-96, JW_001173-74, JW_001287-88, JW_001338, JW_001419, JW_001421, JW_001588, JW_002708-09, JW_002912-13, JW_003140. In at least one instance, Defendant communicated with a prospective California dealer about a possible dealership arrangement, but demurred on entering into the arrangement because "sales going to California enforce [Future Motion's] claims in court." JW_004213-14. In one instance, Defendant communicated with a California resident about providing corporate support for a group Onewheel ride in California, and was open to the possibility, asking the California resident "What kind of support are you looking for?" JW_002503. *All* of Defendant's prospective customers are existing Future Motion customers, because Defendant's products have no use other than installation in a Future Motion product.

### 2. Detailed Technical Support to California Customers

Defendant produced numerous pages of detailed technical support and troubleshooting communications with its California customers relating to the installation of Defendant's products into Future Motion's Onewheel boards. *See, e.g.,* Kolitch Decl., ¶ 7, Ex. E, pp. JW_001708-09, JW_001815, JW_001886-87, JW_001987-94, JW_002216-18, JW_002350-77, JW_002690-91, JW_003322-23, JW_003524-25, JW_003595-96, JW_003812-26, JW_003896. In some instances, Defendant offered to perform installations of its products into Onewheel boards for California customers, or to inspect a California customer's prior installation. Kolitch Decl., ¶ 7, Ex. E, pp. JW_002411-12, JW_002438-42, JW_002935-36, JW_003410-11. In at least one instance, Defendant offered to contact a California customer by phone, although Defendant did not identify or describe this telephone communication in its discovery responses. Kolitch Decl., ¶ 7, Ex. E, p. JW_000232. All of these are not only communications with Defendant's customers, but also necessarily with Future Motion's customers.

### 3. Communications with California Businesses Regarding Installations of Defendant's Products into Future Motion's Onewheel Boards

Defendant produced documents through jurisdictional discovery indicating approximately 20 separate communications with California businesses regarding installation of Defendant's products into Future Motion's Onewheel boards, or with California customers regarding installation of Defendant's products into Onewheel boards by a California company. *See, e.g.,* Kolitch Decl., ¶ 7, Ex. E, pp. JW_000420-23, JW_000442-44, JW_000560-62, JW_001179-80, JW_001586, JW_001643-44,

JW_001668-69, JW_001701, JW_001717-18, JW_001736, JW_001960-62, JW_001971, JW_002702, JW_002730-34, JW_002793-94, JW_003279-80, JW_003335, JW_003652-53, JW_004206-07, JW_004213-14, JW_004501-03.

In at least one instance, Defendant explicitly referred a customer to a California installation business. Kolitch Decl., ¶ 7, Ex. E, p. JW_001971. In one instance, Defendant expressed appreciation for a California customer who offered to donate to Defendant's legal expenses in this case. Kolitch Decl., ¶ 7, Ex. E, p. JW_002702 ("we couldn't do it without folks like yourself!"). In at least one instance, Defendant discussed with a California installer how Defendant had developed a new circumvention chip in response to a recently implemented Future Motion anti-circumvention measure. Kolitch Decl., ¶ 7, Ex. E, p. JW_002730 ("they blocked us with 4161 but we have a way around it. I will get a new chip in the mail to you . . ."). In at least one instance, Defendant offered a volume discount to a California company for purchases of "F*ck Future Motion" chips. Kolitch Decl., ¶ 7, Ex. E, p. JW_001736.

### 4. Routine Communications Targeting Future Motion

In addition to the communications described above, Defendant produced hundreds of additional pages of more routine written communications with its California customers. All of these are communications "directed at California," all relate directly to Defendant's products that are designed for the sole purpose of being installed in Future Motion's Onewheel boards, and all therefore represent communications between Defendant and preexisting Future Motion customers. Kolitch Decl., ¶ 6.

In total, Defendant produced 4,673 pages of written communications with its customers and prospective customers nationwide. Kolitch Decl., ¶ 6. These voluminous communications relate exclusively (or nearly so) to products that *must* be installed in Future Motion's Onewheel boards to function. This volume of written customer communications, *all of which* involve Future Motion's products and *all of which* are communications between Defendant and Future Motion's customers, further demonstrates that Defendant's commercial activities necessarily target California-based Future Motion and its customers.

## V.   CONCLUSION

The "express aiming" requirement for personal jurisdiction is derived from *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, because the tortious conduct was "expressly aimed" at the forum state in which harm occurred. *See id*. at 788-89. Defendant's conduct here is at least analogous.

Defendant has circulated its "F*ck Future Motion" products nationwide, including in California, thereby directly targeting Future Motion's reputation. Defendant has communicated extensively with its California customers and prospective California customers, all of whom were already Future Motion customers, for the purpose of selling those individuals the "F*ck Future Motion" chip and helping them to install it in Future Motion products. Defendant has communicated extensively with California businesses to enable their installations of the "F*ck Future Motion" chip in Future Motion products, and

evidently offers volume discounts to such businesses. Defendant must have known and intended that this conduct would cause injury to Future Motion in California. Under these circumstances, Defendant should "reasonably anticipate being haled into court" in California to answer for its tortious behavior. *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson* , 444 U.S. 286, 297 (1980)). Accordingly, this Court should exercise personal jurisdiction over Defendant in this action.

In the event the Court determines that it does not have jurisdiction over Defendant in this action, for the sake of judicial efficiency and for the convenience of the parties, Future Motion respectfully requests transfer of the action to the Northern District of Texas (where Defendant is located), rather than dismissal of the action.

Dated:  February 22, 2022                Respectfully Submitted,

                                         MICLEAN GLEASON LLP


                                         By:    /s/ David J. Miclean
                                                David J. Miclean
                                                Attorneys for Plaintiff Future Motion, Inc.

Dated: February 22, 2022                 Respectfully Submitted,
                                         KOLITCH ROMANO LLP


                                         By:    /s/ Shawn J. Kolitch
                                                Shawn J. Kolitch (*pro hac vice*)
                                                Attorneys for Plaintiff Future Motion, Inc.